IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION FOR USE IMMUNITY ORDER FOR WILLIAM LUNA ) ) ) ) ) | Misc. No. 08-312 (RCL) |

**UNITED STATES' OPPOSITION TO HERNAN MELENDEZ'S
MOTION TO UNSEAL APPLICATION FOR COMPULSION ORDER, AND POINTS
AND <u>AUTHORITIES IN SUPPORT THEREOF</u>**

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes Hernan Melendez's motion to unseal the United States' Application for a compulsion order for William Luna. The Application was filed in connection with the trial of Melendez for, *inter alia*, second degree murder in the Superior Court for the District of Columbia in the case of *United States v. Hernan Melendez*, 2007 CF1 2478 (Superior Court, Washington, D.C.), between May 12, 2008, and May 27, 2008. Defendant was convicted on all charges on May 27, 2008. William Luna was a witness for the defense. Because his testimony might implicate his fifth amendment privilege, the United States sought and obtained a compulsion order for his testimony.

On July 18, 2008, Melendez, through counsel, filed a motion seeking an order that would unseal the United States' Application for the compulsion order. The defense does not identify any specific relevant information that it hopes to obtain from the Application; rather, it asserts that the information in the Application is relevant to Luna's bias and credibility.

As explained below, the defense provides no basis for unsealing the Application. The defense does not identify any relevant information that could be gleaned from it; indeed, the defense request is simply a fishing expedition. It should be denied.

## BACKGROUND

On January 28, 2007, Melendez and two friends, Yoni Luna and William Luna, had an altercation with the decedent, Andres Benitez, in front of 1225 11th Street, N.W.. Benitez retrieved a softball bat and swung once at the men – he did not hit them. Melendez and the Luna brothers then swarmed Benitez, knocked him to the ground and started kicking him. Melendez then grabbed the bat and hit Benitez in the head ten to fifteen times. A bystander tried to intervene and Melendez hit him once in the head. Melendez hit Benitez in the head several more times, then fled with the Lunas.

Two security guards who witnessed the attack chased Melendez, *et al.* into an apartment building one block away. The guards were only able to apprehend Melendez. He still had the bat in his hand. Subsequent blood and DNA analysis confirmed that the decedent's blood was on the back and inside of Melendez' jacket, and on the bat.

Several days after the murder, William Luna telephoned his girlfriend, Norma Saravia, in New York and told her that he killed a person in Washington, D.C. and wanted her to hide him. Luna told Saravia that if she did not do so, he would kill her. Luna ultimately pled guilty in New York to a charge of aggravated harrassment. Luna never told Saravia or anyone else that he actually wielded the bat.

Defendant was indicted for second degree murder while armed, assault with a deadly or dangerous weapon and related offenses.

The United States disclosed Luna's statement to Saravia to the defense as *Brady* information prior to the trial, and also provided contact information for Luna and Saravia. The United States also placed Luna and Saravia under subpoena for trial. The United States did not

intend to call either Luna or Saravia to testify, but subpoenaed them to ensure that they were available to the defense if the defense wanted to call them. The defense indicated that it would call Saravia to testify about Luna's statement that he killed a man. Pursuant to Fed.R.Ev. 804, such this statement was admissible only as a statement against penal interest and only if Luna was unavailable to testify. Accordingly, the United States sought to make Luna available to testify. The United States asked the trial court to appoint counsel for Luna. After being satisfied that Luna would assert his Fifth Amendment rights, the United States made an Application to this Court for a compulsion order, pursuant to 18 U.S.C. §§ 6001-6005 (2000), to make Luna available to testify. The Application was made under seal.

The trial began in Superior Court on May 12, 2008, before the Honorable Frederick Weisberg. This Court signed the compulsion order on May 19, 2008. The defense called Luna to testify on May 20, 2008. He admitted being involved in the incident. He testified that his memory was less than complete because he had been drinking but admitted that he might have kicked the decedent. He denied swinging the bat and testified that Melendez was the assailant. Luna admitted calling Saravia after the incident and seeking her help, but denied stating that he killed a man. Melendez's counsel elected not to call Saravia to impeach Luna on his apparently contradictory testimony. Melendez's counsel did not ask Luna if he ever wielded the bat.

Melendez's counsel was aware of the compulsion order. In fact, Melendez's counsel examined Luna extensively on the scope and implications of the order.

Melendez was convicted of second degree murder while armed, assault with a deadly or dangerous weapon and possession of a prohibited weapon. Melendez's counsel asked for an enlargement of time to July 23, 2008, to file a motion for new trial, pursuant to Superior Court

Rule of Criminal Procedure 33. The trial court granted the request.

On July 18, 2008, five days before the new trial motion was due, Melendez' counsel filed the instant motion.

## ARGUMENT

### There no basis for unsealing the Application

There is no basis here to unseal the Application. Melendez seeks to learn the representations that the United States made in the Application but he does not explain how any representations could be relevant to issues presented in a motion for a new trial.

There is no dispute that William Luna was involved in the incident that led to the death of Andres Benitez. From his perspective he could well have believed that "he killed a man," so his admission is neither surprising nor relevant. However, the United States is not aware of any instance in which Luna told anyone that he ever held the murder weapon in his hand or did anything to the decedent, other than perhaps kicking the decedent.

The United States has no evidence that anyone other than Melendez hit Benitez with a bat. Indeed, the arresting security guards testified at trial that Melendez was the only person wielding the bat. Additionally, the bystander who Melendez hit and another guard testified that, although they could not identify the assailant in court, they saw the person the guards arrested (Melendez) and it was the person who wielded the bat. Finally, the United States played a 911 tape in which another witness gave a description of the assailant that matched Melendez, and also stated that the person the guards arrested was the assailant.

Melendez contends that the representations made in the Application might be relevant to Luna's bias but it does not explain how. The United States made no promises or agreements

with Luna.

Accordingly, Melendez's motion should be denied. There is no basis to unseal the motion and Melendez does not identify any relevant information that is discoverable in the Application.

## CONCLUSION

For the foregoing reasons Melendez motion should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
STEVEN B. SNYDER
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar No. 419819
555 4th Street, N.W.
Room 9407
Washington, D.C. 20530
(202) 305-1390; Fax: 353-9415

## CERTIFICATE OF SERVICE

I certify that on July 23, 2008, I caused the foregoing to be served by facsimile transmission and United States mail, first class, postage prepaid, upon counsel for Hernan Melendez, Santha Sonenberg, Esq., Public Defender Service, 600 Indiana Avenue, N.W., Washington, D.C. 20004 ((202) 824-2423), and counsel for William Luna, Jose Molina, Esq., Baldwin, Molina & Escoto, 806 7th St N.W., # 301, Washington DC 20001 ((202) 898-1112.

_____
ASSISTANT UNITED STATES ATTORNEY